**In re AIR VERMONT, INC., North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–00019, 84–00017.**

United States Bankruptcy Court, D. Vermont.

May 11, 1984.

See also Bkrtcy., 40 B.R. 323.

Kevin Truland of Gallagher & Gallagher, P.C., Boston, Mass., for Hansman McAvoy & Co., Inc.

Joseph C. Palmisano, Barre, Vt., for debtors.

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

John S. Rodman, Boston, Mass., for Creditors' Committee.

MEMORANDUM AND ORDER ON MOTION OF HANSMAN McAVOY & CO., INC., FOR RELIEF FROM STAY

CHARLES J. MARRO, Bankruptcy Judge.

The Motion of Hansman McAvoy & Co., Inc., for Relief from Stay came on for continued hearing, after notice, on April 13, 1984. In lieu of an evidentiary hearing, the Movant, Hansman McAvoy & Co., Inc., and the Debtors, through their attorneys, Kevin Truland, Esquire, and Joseph C. Palmisano, Esquire, stipulated as follows:

"1. Hansman McAvoy & Co., Inc., (hereinafter Hansman McAvoy) is a Massachusetts business corporation duly licensed as an insurance agency pursuant to Massachusetts General Laws c. 175 section 172 and is also a duly licensed premium finance agency (hereinafter Hansman d/b/a Lloyds Credit of Hingham) pursuant to Massachusetts General Laws c. 255C, section 1 et seq.

"2. Air Vermont, Inc., filed on January 30, 1984, a Petition in this Court seeking relief under Title 11, United States Code, Article 11.

"3. On or about September 29, 1983, Air Vermont, Inc. purchased Aircraft Fleet and Liability Insurance to be placed with Associated Aviation Underwriter's, Inc., (Associated Aviation). In connection therewith, Air Vermont, Inc., executed a Premium Finance Agreement by which it promised to pay to Hansman McAvoy the amount advanced or to be advanced under the agreement to Associated Aviation in payment of the premiums on said policies, all in accordance with Massachusetts General Laws, c. 255C. A copy of the Premium Finance Agreement is attached hereto.[1]

"4. In addition to the policies reflected in said Agreement endorsements were added to said policies at the request of Air Vermont, Inc., resulting in a premium change of $39,365 in addition to the amounts due under the Agreement. Prior to the filing of the within Petition, Air Vermont, Inc., defaulted on the Agreement and has not given adequate protection to Hansman McAvoy d/b/a Lloyds Credit of Hingham.

"5. Because of the financing reflected in the attached Agreement, Air Vermont, Inc., was enabled to obtain Aircraft Fleet and Liability Insurance with Associated Aviation as Hansman d/b/a Lloyds Credit of Hingham advanced to this insurer the premiums necessary to maintain the policies in force.

"6. As of the date of the filing of the Petition herein, the return premiums on said policies amounted to $147,801.50 exclusive of interest, penalties and costs."

## DISCUSSION

The issue here is whether Hansman McAvoy is entitled to a termination of the automatic stay prescribed under § 362 of the Bankruptcy Code so that it may recover the premiums advanced to Associated Aviation in which it has a security interest under the aforesaid Premium Financing Agreement. Under § 362(d) of the Bankruptcy Code, the court may terminate the stay:

(1) for cause, including the lack of adequate protection of an interest in property by a party in interest; or

(2) with respect to a stay of an action against property if—

(A) the debtor does not have any equity in such property; and

(B) such property is not necessary to an effective reorganization.

The stipulated facts recite that the Debtor has not given Hansman McAvoy adequate protection. Further, as of now, the Debtor has filed a Plan for Liquidation under Chapter 11 and, therefore, the premiums are not necessary for an effective reorganization. In addition, the Debtor does not have any equity in them.

The Premium Finance Agreement between the debtor whose address appears as Logan International Airport, Boston, Mass., and Hansman McAvoy and Company, Inc., a Massachusetts corporation, was executed at Logan International Airport, Boston, Mass., and, therefore, is a Massachusetts contract.

Paragraph "3" of the stipulated facts recites that the Agreement was executed "all in accordance with Massachusetts General Laws c. 255C."

---

**1.** A copy of the Premium Finance Agreement is attached at the end of Memorandum.

This indicates that the Debtor recognizes the Premium Finance Agreement as a Massachusetts contract.

■ Under Massachusetts General Laws c. 255C, Section 12, a filing of a premium financing agreement is not necessary to perfect the validity of such an agreement as a secured transaction. In view of this, the position of the Debtor that the security interest in the premiums is not perfected because of failure to file a financing statement in the State of Vermont is without merit.

Even if the Premium Financing Agreement were a Vermont contract and subject to the Uniform Commercial Code, the Debtor's position would still not be sustained. Under the Uniform Commercial Code as adopted in this state, a transfer of an interest or claim in or under any policy of insurance is excluded from Article 9 relating to SECURED TRANSACTIONS. See 9A V.S.A. § 9–104(g).

Case law also supports Hansman McAvoy. See In Re Auto-Train Corporation (Bankr. District of Columbia 1981), 9 B.R. 159, 164, in which the Court struck down the trustee's argument that the interest of the secured party in unearned insurance premiums was unperfected because of its failure to properly perfect its security interest by the filing of a financing statement. The Bankruptcy Court pointed out that all rights under a policy of insurance were excluded under Article 9 § 9–104(g). And in *Premium Financing Specialists,*

*Inc., v. Lindsey,* 11 B.R. 135 (D.C.1981), 31 U.C.C.Rep.Ser. 674, the U.S. District Court on appeal from the Bankruptcy Court held that an insurance premium financing company had an enforceable security interest in unearned premiums upon the bankruptcy of the insured. It reasoned that the transaction was exempted from Article 9 coverage as "a transfer of an interest or claim in or under any policy of insurance" and since no other Arkansas law required filing in order to perfect a security interest, the failure to file did not mean that the security interest was not enforceable against the trustee in bankruptcy. The result is the same as to a debtor in possession under Chapter 11 who, under section 1107 of the Bankruptcy Code, has the same rights, powers and duties as a trustee.

It follows that Hansman McAvoy is entitled to termination of the stay and to the insurance premiums covered by its security interest.

### ORDER

Now, therefore, upon the foregoing, IT IS ORDERED:

1. The automatic stay prescribed by § 362 of the Bankruptcy Code is terminated.

2. Hansman McAvoy & Co., Inc., is entitled to possession of the return premiums amounting to $147,801.50.

3. The insurance policies issued by Associated Aviation Underwriters, Inc., may be cancelled.

### APPENDIX

| CASH PRICE Total Cash amount of Premium | | | ACCT # 800057 | REG NO | VEHICLE IDENT NO. | |
|---|---|---|---|---|---|---|
| $ 178,090 | | | INSURED (AS ON POLICY) Air Vermont, Inc. STREET (AS ON POLICY) Logan International Airport CITY, STATE, ZIP Boston, MA 02127 2161 | | | |
| DOWN PAYMENT Your Cash deposit $ 17,809 | FINANCE CHARGE DETAIL Administrative fee $ _____ Interest $ _____ | | MAIL ADDRESS (IF DIFFERENT) INSURANCE AGENT OR BROKER Hansman McAvoy & Co. Inc. 20-0004 | | | |
| AMOUNT FINANCED The amount of credit provided to you on your behalf | FINANCE CHARGE Dollar amount the credit will cost you. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled | TOTAL SALE PRICE The cost of your Premiums on credit including your downpayment of $ 17,809 | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | | SECURITY You are giving a Security Interest in the Insurance Policies described below. LATE CHARGES: Personal or Household Accounts You will be charged $5.00 or 5% of the payment, whichever is less. Commercial Accounts 5% of monthly payment PREPAYMENT: If you pay off early, you will not have to pay a penalty. You may be entitled to a refund of part of the Finance Charge. See your Contract Documents for any additional information about non-payment, default, any required payment in full before the scheduled date, and prepayment refunds and penalties. ● means an estimate |
| $ 160,281 | $ 4,449 | $ 164,730 | $ 82,539.00 | 6% | | |
| YOUR PAYMENT SCHEDULE WILL BE: | | | | | | |
| No. of Payments 10 | | | Amount of Each Payment 16,473 | | When Payments are Due: Monthly Beginning 10-29-83 | |

ITEMIZATION OF AMOUNT FINANCED: The amount listed as Amount Financed is being paid to your Insurance Agent/Broker/Company in your behalf

338

**LATE CHARGE:** If a payment is late you will be charged $_____ making Total Payment Due $_____

| CASH PRICE (PREMIUM) | CHECK NO. | INSURANCE COMPANY AND POLICY WRITING AGENT IF DIFFERENT | TYPE OF INSURANCE | EFF DATE | POLICY NO |
|---|---|---|---|---|---|
| 172,590 | | Associated Aviation | Aircraft fleet | 9-29-83 | 99FHL13993 |
| 5,500 | | Associated Aviation | Aircraft Liab. | 9-29-83 | APL9914146 |

$_____ GRAND TOTAL-CASH PRICE

The FINANCE CHARGE will begin to accrue on _____ 19____.     Date is estimated if checked here ☐

$_____     _____ Mass. _____ 19____
                    (city or town)

FOR VALUE RECEIVED, the undersigned jointly and severally if more than one, hereinafter called the maker, promises to pay to the order of the above named insurance agent or broker, the total amount shown above in successive monthly installments as stated above, which installments include interest at the agreed rate beginning on the stated due date for the first installment and continuing on the same day of each succeeding month to and including the stated due date for the final installment

The total amount above stated includes interest precomputed as though each installment were paid when due and applied first to interest at the agreed rate and remainder to principal. In lieu of applying each payment as and when made first to interest and then to principal, payments may be applied to the total amount of this note. Precomputed interest is subject to rebate for prepayment in full as provided by order of the Insurance Premium Finance Board in accordance with General Laws, c 175, s 162B, and in addition, the maker agrees to pay default, deferment, or cancellation charge, as provided in said order and in Massachusetts General Laws, Chap 255C

In the event of a default of more than ten (10) days in the payment in full of any scheduled installment, a default charge will be made and collected not exceeding 5 percentum (5%) of the installment in default or $5.00 whichever is less. If this is a commercial account the default charge shall be 5 percentum (5%) of the payment

This note is given in payment of the premium or premiums on the policy or policies above described, and the maker agrees to deposit said policy or policies with the holder within five days after demand at any time, as collateral security for this note. Premiums advanced to any agent, broker, or Insurance Company shall also receive this note

The maker agrees that the proceeds of the credit life insurance policy provided for in this note, if any, may be applied against the balance owed hereunder, rendering any surplus to the estate of the assured

Upon failure to pay any installment when due, failure to deposit the policies as herein provided, loss under any of said policies, encumbrance or assignment of said policies without consent of holder, or the termination, cancellation or becoming void of the policies for any reason whatsoever, the entire unpaid balance of the note shall become immediately due and payable and the holder may forthwith effect the cancellation of any of said policies. The maker hereby irrevocably appoints the holder the maker's true and lawful attorney to execute and deliver all documents and perform all acts necessary or appropriate to effect cancellation of the policies and to demand, collect, sue for, receive and receipt for any return premiums, dividends or other amounts recoverable thereon, which amounts shall be applied toward satisfaction of this note, rendering any surplus to the person(s) entitled thereto, the maker agrees to pay on demand any deficiency

The assured authorizes the holder to make corrections only to the extent such become necessary as a result of a change in premium charges by the insurance underwriter

2 06 A cancellation charge which is permitted pursuant to M G L c 255C, s 15 may be made and collected in an amount not to exceed the greater of two percent (2%) of the unpaid balance due on the Agreement or Five dollars ($5 00). No cancellation charge may be assessed except in connection with a cancellation notice pursuant to M G L c 255C, s 21, which has been issued to the policyholder more than 10 days after the effective date of a charge permitted herein under 855 CMR 2 05 and further provided that, when an agreement is primarily for personal, family or household purposes, the maximum allowable cancellation charge shall be Five dollars ($5.00). It is further provided that the amount, if any, by which any cancellation charge allowed exceeds Five dollars ($5.00) may be collected if and only if the cancellation issued has become effective. No cancellation charge may be assessed or collected for more than one cancellation notice issued during the term of the agreement. Any cancellation charge due may be deducted from the gross unearned premiums received from the insurer

(1) DO NOT SIGN THIS AGREEMENT IF ANY OF THE SPACES INTENDED FOR THE AGREED TERMS ARE LEFT BLANK.

(2) YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT.

(3) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE INTEREST CHARGE BASED ON THE "RULE OF 78's". NO PORTION OF THE ADMINISTRATIVE FEE SHALL BE REFUNDED FOR ANY PREPAYMENT IN FULL. NO REFUND WILL BE MADE IF LESS THAN $1.00.

THE UNDERSIGNED EXECUTED THIS AGREEMENT AND RECEIVED A COPY THEREOF THIS_____ DAY OF_____ 19____

Witness _____

_____                                    Logan International Airport
Signature of Assured                                              Street and Number

John Porter-Air Vermont, Inc.          Boston, MA
Please Print Assured's Name Here                City              State

**ASSIGNMENT WITH - WITHOUT RECOURSE**

FOR VALUE RECEIVED, the undersigned hereby, with — without recourse, sells, assigns and transfers to Lloyds Credit Corporation or order, all right, title and interest in, to and under the above note, and all right, title and interest of the undersigned in, to and under the insurance policy or policies constituting security thereof and warrants that the note and signatures thereon are valid and that the policy or policies listed are correctly described and in full force and effect

LLOYDS CREDIT CORPORATION          SIGNATURE _____
975 Mechanics Tower
Worcester, MA 01608                    Use After Assignment at the Office of          INSURANCE AGENT OR BROKER

ORIGINAL COPY.