In re Johnny Lee WEBB and Cynthia
Jan Webb, Debtors.

Margaret B. FUGATE, Trustee, Plaintiff,

v.

CARTER COUNTY BANK; Clinchfield
Federal Credit Union; Credit Bureau
Systems, Inc.; University Physicians
Practice Group; John Byrd; and Mail
Handlers Benefit Plan, Defendants.

Bankruptcy No. 94–20593.
Adv. No. 94–2125.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 11, 1995.

Anderson, Fugate, Givens & Count, Margaret B. Fugate, Johnson City, Tennessee, for Margaret B. Fugate, Trustee.

W. Robert Manuel, Erwin, Tennessee, for Clinchfield Federal Credit Union.

Shults & Shults, Lois B. Shults, Erwin, Tennessee, for Erwin National Bank.

Norris, Bush and Byrd, Lanny R. Norris, Elizabethton, Tennessee, for Carter County Bank.

David M. Guinn, Johnson City, Tennessee, for John Byrd.

*MEMORANDUM*

MARCIA PHILLIPS PARSONS,
Bankruptcy Judge.

This adversary proceeding is before the court on a motion for summary judgment filed by the plaintiff, Margaret B. Fugate, the chapter 7 trustee ("Trustee"), wherein she requests the court to determine the rights of the parties to certain proceeds held by the Trustee arising from a prepetition settlement of the debtors' personal injury lawsuit. Prior to the filing of this bankruptcy case and while the personal injury action was pending, the debtors executed certain assignments of the proceeds of their cause of action and the assignees have now asserted claims to the settlement funds held by the Trustee.

The defendants in this adversary proceeding are all assignees of the debtors, with the exception of Mail Handlers Benefit Plan (the "Benefit Plan"). According to the complaint, the Benefit Plan paid part of the medical expenses incurred by Mrs. Webb for treatment of the injuries which led to the filing of the personal injury action and was named as a defendant in the event a subrogation claim was asserted against the settlement proceeds.

The defendants Carter County Bank, Clinchfield Federal Credit Union ("Clinchfield Federal"), and John Byrd have filed answers to the complaint claiming interests in the settlement proceeds by virtue of their assignments. Those defendants, along with the Trustee, have submitted stipulations of what they deem to be the material facts and all agree that this matter may be appropriately decided upon the Trustee's motion for summary judgment. The remaining defendants, Benefit Plan, Credit Bureau Systems, Inc., and University Physicians Practice Group have not appeared in this action despite being served with a copy of the complaint and summons. As a result, the Trustee has moved for default judgment against them. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O).

I.

The facts as stipulated establish that prior to the commencement of this chapter 7 case on April 20, 1994, the debtors filed a personal injury action against Lakewood Village Associates and All American Realty, Inc. in the Johnson City, Tennessee Law Court, bearing civil action number 14653. On December 29, 1992 [1], while the personal injury action was pending, the debtors executed a written assignment in favor of defendant Carter County Bank which provided that the debtors were assigning to Carter County Bank sufficient proceeds from their personal injury lawsuit to repay a certain indebtedness owing to Carter County Bank, evidenced by a renewal note of February 6, 1992, in the principal amount of $17,149.20 along with interest accruing thereafter at the rate set forth in the note. No monies were advanced to the debtors by Carter County Bank at the time of the execution of the assignment.

Thereafter, the debtors executed two assignments in favor of defendant Clinchfield Federal. The first assignment dated January 25, 1993, provided that the debtors were assigning to Clinchfield Federal sufficient monies from any funds received as reimbursement for medical expenses from Mail Handlers Insurance Company to pay a contemporaneously executed promissory note to Clinchfield Federal in the amount of $1,700.00. Also on that day, the debtors received loan proceeds of $1,700.00 from Clinchfield Federal. Subsequently, on March 11, 1993, the debtors executed a second assignment to Clinchfield Federal, assigning sufficient monies from the proceeds of their personal injury lawsuit against Lakewood Associates and All American Realty, Inc. to pay two notes then owing to Clinchfield Federal in the amounts of $2,753.02 and $7,488.07.

On August 20, 1993, the debtors executed an assignment in favor of defendant John Byrd, assigning to him a sum of money from the personal injury cause of action which would be sufficient to repay a debt owing to

---

**1.** Although the stipulations filed by the parties on April 7, 1995, recite that the assignment to Carter County Bank was executed on December 29, 1993, a copy of the assignment, which was likewise stipulated, evidences an actual execution date of December 29, 1992.

Mr. Byrd in the amount of $4,141.00, representing an existing indebtedness of $3,141.00 and $1,000.00 in new money received by the debtors on that date.[2]

On April 12, 1994, immediately preceding the filing of their chapter 7 bankruptcy case, the debtors settled the personal injury action for the sum of $80,000.00. After payment of their attorney's fees and expenses, the debtors received $55,619.26. Upon the commencement of the debtors' chapter 7 case on April 20, 1994, the debtors delivered $34,-700.63[3] of the settlement proceeds to the Trustee, apparently in recognition that various claims were being made against the proceeds by the defendants in this action pursuant to the assignments.[4]

In addition to the stipulations of the parties which have been submitted, the parties have tendered for consideration by the court the various assignments executed by the debtors and the proofs of claims filed by Carter County Bank and Clinchfield Federal. These proofs of claim establish that the debtors owed Carter County Bank $17,610.32 and Clinchfield Federal $11,556.83 as of the commencement of this case.

Carter County Bank has also tendered the affidavit of attorney Edwin L. Treadway, counsel for the defendants, Lakewood Village Associates and All American Realty, Inc., in the debtors' personal injury lawsuit. Mr.

Treadway states that attorney Lanny Norris, counsel for Carter County Bank, telephoned him on February 17, 1993 and advised him of the assignment by the debtors to Carter County Bank.

The Trustee alleges that her rights as a judicial lien creditor pursuant to 11 U.S.C. § 544(a) are superior to the rights of any of the defendants arising from the assignments. The Trustee notes that it is well established Tennessee law that the assignment of a chose in action is not complete so as to vest absolute title in the assignee until notice of the assignment has been given to the obligor. The Trustee asserts that because written notice of the assignments was not given to the defendants in the personal injury action, the assignments are not effective against a trustee in bankruptcy. Although not stipulated, it appears undisputed that no written notice of the assignments was given by any of the defendants and the only notice given at all was pursuant to the oral communication between counsel for Carter County Bank and Mr. Treadway. Carter County Bank alleges that such notice is sufficient. Clinchfield Federal and John Byrd deny that notice is necessary for the assignment to be effective as against the chapter 7 trustee.

## II.

■ The debtors' right to recover for the personal injuries sustained by Mrs. Webb

---

2. The stipulations filed by the parties on April 7, 1995, and submitted on John Byrd's behalf by his counsel recite in *paragraph 3* that no monies were advanced to the debtors by Mr. Byrd at the time of the assignment. However, on June 26, 1995, Mr. Byrd's counsel filed a "Proposed Amendment to Stipulations of John Byrd" which proposes to amend *paragraph 3* of the stipulations by striking the words "no monies" and substituting in lieu thereof the sentence "John Byrd did advance the sum of $1,000.00 cash to Mr. and Mrs. Webb at the time of the transfer of assignment on August 20, 1993, then making a total loan to them in the amount of $4,141.00." The proposed amendment further states that the original error was caused by a serious heart condition suffered by Mr. Byrd and that "it is believed by Mr. Byrd that the Webbs will be willing to stipulate this correction." The court deems the stipulations amended as proposed because no objection to the proposed amendment has been made, although the factual information in the amendment is irrelevant to this court's ruling, the Trustee having not challenged the consideration for the assignments.

3. The pleadings and stipulations do not fully explain the disposition of $20,918.63, *i.e.*, the difference between the funds received by the debtors and the funds remitted to the Trustee. The complaint does state that from the settlement proceeds, the debtors exempted $6,760.00 pursuant to TENN.CODE ANN. § 26–2–102, placed $4,500.00 in an IRA for 1993 and 1994, denominated $619.26 as an expense and utilized $1,160.00 for bankruptcy attorney and filing fees, which would account for all but $7,879.37 of the $20,918.63 difference. The complaint further notes that the debtors have claimed exemptions of $35,080.00 and $7,500.00 in the settlement proceeds pursuant to TENN.CODE ANN. § 26–2–111, and the Trustee has objected to the claimed exemptions, although that issue is not before the court in this adversary proceeding.

4. The court notes that the amount of the proceeds paid to the Trustee, $34,700.63, equals the total of the principal amounts assigned by the debtors to the various defendants in this action as set forth in *paragraph 7* of the complaint.

is known as a "chose in action." *See* BLACK'S LAW DICTIONARY 241 (6th ed. 1990), *citing Moran v. Adkerson,* 168 Tenn. (4 Beeler) 372, 79 S.W.2d 44 (1935) (chose of action is a right to receive or recover a debt, demand, or damages on a cause of action *ex contractu* or for a tort or omission of a duty). *See also Childress v. Childress,* 569 S.W.2d 816, 818 (Tenn.1978) (right of action arising from negligence is a chose in action), *overruled upon other grounds, Davis v. Davis,* 657 S.W.2d 753 (Tenn.1983). In Tennessee, the assignment of a chose in action is not effective against third party creditors of the assignor unless notice of the assignment is given to the party obligated to pay. *See Moran v. Adkerson,* 168 Tenn. (4 Beeler) 372, 79 S.W.2d 44 (1935); *DeSoto Flooring Co. v. Old Dominion Table & Cabinet Works,* 163 (10 Smith) 532, 43 S.W.2d 1069 (1931); *Clodfelter v. Cox,* 33 Tenn. (1 Sneed) 330 (1853); *Union Livestock Yards, Inc. v. Merrill Lynch, Pierce, Fenner & Smith,* 552 S.W.2d 392 (Tenn.App.1976); *Kivett v. Mayes,* 49 Tenn. App. 272, 354 S.W.2d 492 (1961); *In re Expressco, Inc.,* 99 B.R. 395 (Bankr.M.D.Tenn. 1989); *Dickenson v. Third National Bank (In re Yates),* 58 B.R. 257 (Bankr.E.D.Tenn. 1986); *Robby's Pancake House of Florida, Inc. v. Walker (In re Robby's Pancake House of Florida, Inc.),* 24 B.R. 989 (Bankr. E.D.Tenn.1982).

As stated by the Tennessee Supreme Court in the case of *Clodfelter v. Cox,* the leading Tennessee decision on this issue:

> The weight of American authority seems to be that the assignment of a *chose in action* is complete in itself, and vests a perfect title in the assignee, as against third persons, without notice of the assignment to the debtor. But the contrary of this is the

settled doctrine of the English, as well as of some of the courts of this country, at the present day. The latter we consider as the more reasonable and safe practical rule, and have accordingly held, on more than one occasion, that the assignment of a *chose in action* is not complete, so as to vest the title absolutely in the assignee, until notice of the assignment to the debtor; and this not only as regards the debtor, but likewise as to third persons. And, therefore, as between successive purchasers or assignees of a *chose in action,* he is entitled to preference who first gives notice to the debtor, although his assignment be subsequent to that of the other. To perfect the assignment, not merely as against the debtor, but also as against creditors and subsequent *bona-fide* purchasers, notice must be given. Hence it follows that an attachment by a creditor, in the period intervening between the assignment and the notice, will have preference.

> This doctrine furnishes a definite rule for determining between opposing equities; and places the rights of the assignee of a *chose in action* upon a footing of security altogether unattainable under the opposite rule. (Citation omitted).

*Clodfelter v. Cox,* 33 Tenn. (1 Sneed) at 339.

11 U.S.C. § 544(a)[5] provides the Trustee with, *inter alia,* the rights, powers and status under state law of a judicial lien creditor and a creditor holding an execution unsatisfied. *See* COLLIER ON BANKRUPTCY ¶ 544.02 (15 ed. 1995). Because in Tennessee an assignment is valid as against a judicial lien or executing creditor only if notice has been given to the obligor, bankruptcy courts in Tennessee considering the issue of the

---

5. 11 U.S.C. § 544(a) states that "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, and execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

validity of assignments *vis-à-vis* a trustee with the strongarm powers of § 544(a) have recognized that assignments are enforceable against bankruptcy trustees only if notice of the assignment was given to the obligor prior to the bankruptcy filing. *See In re Expressco, Inc.,* 99 B.R. at 396; *In re Yates,* 58 B.R. at 258; *In re Robby's Pancake House of Florida,* 24 B.R. at 1001. Accordingly, in order to determine the priority of interests in the proceeds held by the Trustee, this court must determine whether sufficient notice of the assignments was given to the defendants in the personal injury lawsuit prior to the debtors' bankruptcy filing, and if not, whether the defendants herein have any other basis to assert an ownership interest in the lawsuit proceeds.

### III.

The court will first address the assignment to Carter County Bank in the amount of $17,149.20 plus interest, executed by the debtors on December 29, 1992. As stated above, according to the affidavit of Edwin L. Treadway, attorney for the defendants in the debtors' personal injury action, Lanny Norris, the attorney for Carter County Bank, telephoned Mr. Treadway on or about February 17, 1993, and advised him that the debtors had executed the assignment in favor of Carter County Bank and requested that he be kept advised of the status of the case. The affidavit further recites that two more telephone conversations between these attorneys occurred, the first on August 4, 1993, wherein Mr. Treadway advised Mr. Norris that the trial in the personal injury action had been continued, and the final telephone conversation on the morning of March 16, 1994, wherein Mr. Treadway telephoned Mr. Norris to inform him that the lawsuit had been settled the previous evening and that a settlement draft would be sent to debtors' counsel in the next few days.

The Trustee maintains that these oral communications were not sufficient notice to perfect the assignment by the debtors to Carter County Bank. According to the Trustee, such notice must be in writing or recorded, or a copy of the assignment must have been provided to the obligors. The Trustee argues that to hold otherwise, would make it difficult to accomplish the purpose of the notice rule which is to determine priority and order of payment with certainty. *See Peters v. Goetz,* 136 Tenn. (9 Thomp.) 257, 261, 188 S.W. 1144 (1916) (doctrine that assignment is not complete until notice furnishes a definite rule for determining between opposing equities).

The case law, however, provides no authority for the Trustee's position. Although there are no reported decisions precisely on point, the courts have made it clear that "formal notice is not necessary; knowledge of the [assignment] is sufficient." *See Daniels v. Pratt,* 74 Tenn. (6 Lea) 443, 447 (1880), *citing McLin v. Wheeler,* 37 Tenn. (5 Sneed) 687 (1858). "[W]hatever is sufficient to put a person upon inquiry is equivalent to notice." 3 TENN.JURIS. *Assignments* § 35 (1982), citing *Ryland v. Brown,* 39 Tenn. (2 Head) 270 (1858); *Merritt v. Duncan,* 54 Tenn. (7 Heisk.) 156 (1872). Thus, no particular form of notice is mandated so long as the method of notice used is sufficiently specific and direct to inform the obligor that an assignment has occurred. Therefore, it is irrelevant in the present case that the obligors did not have a copy of the Carter County Bank assignment or that the existence of the assignment had not been otherwise communicated to the obligors in writing. Regardless of the means by which the knowledge was acquired, it is clear that Mr. Treadway, attorney for obligors, knew of the assignment and acknowledged its existence as shown by the fact that within hours after settlement of the lawsuit, he telephoned Mr. Norris, attorney for Carter County Bank, to advise him of the settlement.

The sufficiency of informal or oral notice is further supported by the lack of any statutory requirement that assignments be recorded or registered to be valid and by the many cases which have held that constructive notice, whether in the form of registration or recordation of the assignment [6], or by enter-

---

6. *See, e.g., Miller, Stewart & Co. v. O'Bannon,* 72 Tenn. (4 Lea) 398, 403 (1880); *Dews v. Olwill,* 62 Tenn. (3 Baxt.) 432, 438 (1874).

ing the assignment on the minutes of the court[7], is inadequate to constitute notice; actual notice must be given. *See generally* 3 TENN.JURIS. *Assignments* § 35 (1982). The court concedes that the lack of written notice may make proof of notice difficult and may present problems in determining priorities if several entities are claiming the same fund as in the present case. However, problems of sufficiency of proof are not uncommon and, as in any other instance, are properly borne in this case by the assignee who must establish a *prima facie* case which includes evidence that adequate notice was given.

The Trustee has not asserted that notice of the assignment, as conveyed to Mr. Treadway, did not suffice as notice to his clients. And the courts have recognized that notice to the attorney for the obligor having control of the lawsuit is sufficient. *See Gayoso Savings Institute v. Cornelius Fellows*, 46 Tenn. (6 Cold) 467, 473 (1869); *cf., Daniels v. Pratt*, 74 Tenn. (6 Lea) at 449. Accordingly, the court finds that notice to Mr. Treadway was sufficient to put his clients on notice of the assignment executed by the debtors. As a result, the assignment by the debtors to Carter County Bank of proceeds[8] from the personal injury lawsuit was valid and Carter County Bank's ownership claim of $17,610.32 as set forth in its proof of claim

is superior to the interests of the Trustee as judicial lien creditor.

### IV.

With regard to the assignments to Clinchfield Federal, the first assignment in the amount of $1,700.00, executed by the debtors on January 25, 1993, makes no mention of the debtors' personal injury cause of action in the text of the assignment. In fact, the subject of that assignment is "any funds we [the debtors] receive as reimbursement for medical expenses from Mailhandlers Insurance Company." The second assignment to Clinchfield Federal does pertain to proceeds to be received by the debtors from the personal injury lawsuit, but in neither case was notice given to the obligor, or for that matter, the attorney for the obligor. Mr. Treadway's affidavit recites that no other party advised him that it had an assignment from the debtors.

Despite its failure to give notice, Clinchfield Federal makes two arguments as to why its claim is superior to that of the Trustee's. First, Clinchfield Federal asserts that the assignments to them by the debtors constituted "security agreements" as that phrase is defined in TENN.CODE ANN. § 47-9-105(1)(*l* ),[9] that security agreements are valid

---

7. *See, e.g., Penniman & Bro. v. Smith*, 73 Tenn. (5 Lea) 130, 136 (1880); *Flickey Stedman & Flack v. B.S. & A.W. Loney & Company*, 63 Tenn. (4 Baxt) 169, 171 (1874); *Clodfelter v. Cox*, 33 Tenn. (1 Sneed) at 338; *Daniels v. Pratt*, 74 Tenn. (6 Lea) at 447.

8. Although the parties' stipulations recite only that the debtors assigned certain proceeds from their cause of action to Carter County Bank, the court notes that the assignment to Carter County Bank not only included language transferring the proceeds of the personal injury action, but also "all claims, demands and causes of action of whatsoever kind and nature, which we had, or now have, or may have against Lakewood Village Associates...." To the extent that the chose in action itself was to be assigned, that portion of the assignment would be ineffective and unenforceable under Tennessee law. *See Can Do, Inc. v. Manier, Herod, Hollabaugh & Smith, P.C.*, 1994 WL 570093, *2 (Tenn.App.1994), *appeal granted*, No. 01-5-9501CH00013 (Tenn. Jan. 30, 1995) ("Torts for personal injuries ... are ... unassignable."), *citing Annot. Assignability of Claim*

*for Personal Injury or Death*, 40 ALR 2d, 500. Although the Trustee has not challenged the invalidity of the assignment *per se*, and there is no Tennessee case directly on point, it appears that generally the courts have distinguished between assignment of the proceeds and assignment of the cause of action itself, such that even though an assignment of the cause of action itself would be ineffective, the assignment of the proceeds would not. *See In re Duty*, 78 B.R. 111 (Bankr. E.D.Va.1987); *Community Hospital of Roanoke Valley, Inc. v. Musser (In re Musser)*, 24 B.R. 913 (W.D.Va.1982); *Andrea G. Nadel, Annotation, Assignability of Proceeds of Claim for Personal Injury or Death*, 33 ALR 4th 82 (1984). The facts indicate that neither the debtors nor Carter County Bank actually intended for the assignment of the chose in action as the debtors continued their prosecution of the action thereafter. Accordingly, the court has disregarded the ineffectual portion of this assignment for the purposes of this ruling.

9. TENN.CODE ANN. § 47-9-105(1) sets forth the definitions of certain words for the purposes of Chapter 9 of Title 47 of the Tennessee Code

# 228

against other creditors under Tenn.Code Ann. § 47–9–201 [10], and that there is no statutory requirement directing the recordation of assignments in order for them to be "perfected."

▉▉▉ In response to this argument, the court initially notes that specifically excluded from the applicability of Article 9 of the Uniform Commercial Code as adopted by Tenn.Code Ann. § 47–9–101, *et seq.*, are "transfer[s] in whole or in part of any claim arising out of tort." *See* Tenn.Code Ann. § 47–9–104(k). Accordingly, the debtors' transfer of a portion of the proceeds of their personal injury lawsuit would not be controlled by the statutory provisions cited by Clinchfield Federal. Secondly, regardless of whether the assignments to Clinchfield Federal were intended as security for the debts or outright transfers in satisfaction of the debts, notice of the assignment must have been given to the obligor to be effective against a bankruptcy trustee. *See In re Expressco,* 99 B.R. at 395. Finally, although this court agrees with Clinchfield Federal as stated above that there is no statutory requirement that assignments be recorded in order for them to be effective, the law is

clear that assignments are not effective, *i.e.,* they are not perfected, unless notice has been given. And, even if Clinchfield Federal is correct that the assignments were grants of security interests, it is hornbook law that security interests are not effective against lien creditors such as a trustee in the absence of perfection.[11] Because Clinchfield did not perfect the assignments by giving notice, the assignments fail.

▉▉▉ Next, Clinchfield Federal asserts that the two assignments created a constructive or express trust. However, no mention is made of a trust relationship in either of the assignments. Therefore, there is no factual basis for Clinchfield Federal's assertion that the assignments were intended to create express trusts. As for the argument that the court should apply the equitable remedy of a constructive trust, the equities of the present case are not in Clinchfield Federal's favor.[12] If this were a contest strictly between the assignor and the assignee, and the former had engaged in some act or conduct to deprive the assignee of its rights, then this court as a court of equity could act to protect an assignee's rights. *See* 3 Tenn.Juris. *As-*

(Secured Transactions) and specifies that " 'security agreement' means an agreement which creates or provides for a security interest."

**10.** Tenn.Code Ann. § 47–9–201, entitled "General validity of security agreement," provides in part that: "[e]xcept as otherwise provided by chapters 1–9 of this title a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors."

**11.** Despite Clinchfield Federal's assertion, the word "perfect" as used in a discussion of assignments such as those at issue in the present case does not refer to the perfection of a security interest, because the assignments at issue herein do not purport to be ones creating liens. Rather than secure payment, the assignments operate to transfer title to the contingent proceeds for payment upon the debtors' preexisting or concurrent indebtedness. *See, e.g., In re Petry,* 66 B.R. 61, 63 (Bankr.N.D.Ohio 1986) (assignment did not create security interest for the simple reason that it does not secure payment, but it is the payment of the obligation). The "perfection" confusion is perhaps attributable to the terminology utilized by the courts in their analysis of whether notice of the assignment has been given to the obligor so as to completely transfer and vest the legal

ownership of a chose in action. In many cases the completeness of such a transfer is referred to as being "perfected." *See, e.g., Flickey, Stedman & Flack v. B.S. & A.W. Loney & Co.,* 63 Tenn. (4 Baxt.) at 172 (assignment may only be "perfected" as against debtor or his creditors by notice that such assignment has been made); *see also* Black's Law Dictionary 1137 (6th ed. 1991) ("perfect or perfected" means "complete, finished, executed; enforceable; without defect; merchantable; marketable.")

**12.** Nor is this case appropriate for the imposition of a constructive trust. "Tennessee has imposed constructive trusts in four types of cases. They are: (1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by fraud, duress or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits." *Myers v. Myers,* 891 S.W.2d 216, 219 (Tenn.App. 1994), *citing* Gibson's Suits in Chancery § 383 (7th ed. 1988). *See also Browder v. Hite,* 602 S.W.2d 489, 492 (Tenn.App.1980). The facts of this case do not fall within any of these categories.

*signments* § 52 (1982). However, "[i]n a contest between creditors of a common debtor it is a question of diligence, not of equity, and the creditor who first perfects his right by notice to the debtor must prevail." *Penniman & Bro. v. Smith,* 73 Tenn. (5 Lea) at 137. Also, the legal doctrine that equity must follow the law in adjudicating questions affecting legal estates, rights, interests or duties is applicable. *See* GIBSON'S SUITS IN CHANCERY § 29 (6th ed. 1982); *Bedwell v. Bedwell,* 774 S.W.2d 953, 956 (Tenn.App. 1989). Because the law requires that notice be given to the obligor to "perfect" title vis-á-vis third party creditors, including the Trustee, this court can not and will not disregard the law and spare Clinchfield Federal from its failure to protect its interest. Accordingly, this court finds that the assignments to Clinchfield Federal are not enforceable against the Trustee.

### V.

The assignment to John Byrd, executed by the debtors on August 20, 1993, in the amount of $4,141.00 must also fail because no notice of the assignment was provided to the obligors. Mr. Byrd cites *Cumberland Portland Cement Co. v. Reconstruction Finance Corp.,* 140 F.Supp. 739 (E.D.Tenn.1953), *aff'd, Ralph Rogers & Co. v. Reconstruction Finance Corp.,* 232 F.2d 930 (6th Cir.1956), as authority for the position that the "rights of the trustee in bankruptcy ... would be subject to the rights of the assignee." Byrd Brief at p. 2. However, in that case, the court specifically found that the assignment was effective because notice had been given to the obligor. *Id.* at 752.

Mr. Byrd also cites *Petition of National Discount Co.,* 272 F. 570 (6th Cir.1921), *cert. denied, Williams v. National Discount Co.,* 257 U.S. 635, 42 S.Ct. 48, 66 L.Ed. 408 (1921), for the proposition that since the ultimate obligor was an "out-of-state liability insurance carrier for the debtors' tortfeasor, Lakewood Associates, and whose funds that finally paid the settlement had a situs located out of Tennessee," no notice of the assignment to the obligor was required. That case is inapposite as the court therein first found that the contract which provided for the as-

signment of notes and accounts receivables from time to time was governed by Ohio law since the contract was executed in that state and was to be performed in that state. *Id.* at 573. As a result, the court therein applied Ohio law to test the validity of the assignment provisions of the contract and under Ohio law, notice to the obligor is not necessary for the assignment to be effective. In the case *sub judice,* the assignment to Mr. Byrd was executed in Tennessee, concerned proceeds from a lawsuit pending in Tennessee, and was to be performed in Tennessee. Accordingly, Tennessee law, which requires notice of the assignment to be complete, must be applied in this case. Because notice was not given, the rights of the Trustee in the settlement proceeds are superior to those of Mr. Byrd.

### VI.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c), incorporated by Fed.R.Bankr.P. 7056. The Trustee, having moved for summary judgment against defendants Carter County Bank, Clinchfield Federal, and John Byrd, and those parties having submitted that the matter should be decided upon the Trustee's motion, the court will enter an order providing that the settlement proceeds turned over to the Trustee by the debtors, less $17,610.32 which was validly assigned to and "perfected" by Carter County Bank prepetition, is property of the bankruptcy estate of the debtors.

Regarding the remaining defendants, Credit Bureau Systems, Inc., University Physicians Practice Group, and Mail Handlers Benefit Plan, the Trustee has moved for default judgment. The record establishes that each of these defendants was served with process by U.S. mail, return receipt requested, on October 24, 1994, and received a copy of the summons and complaint. Despite service, no appearance was made. Accordingly, the Trustee is entitled to judgment by default against those defendants. *See* Fed.R.Civ.P. 55(b)(2), incorporated by Fed.R.Bank.R. 7055.

The foregoing constitutes findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052. An order will be entered in accordance with this memorandum opinion.